UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Vital Images, Inc.,<br>     Plaintiff,<br><br>vs.<br><br>Somanetics Corporation,<br>     Defendant. | **COMPLAINT**<br>**(Jury Trial Demanded)** |

COMES NOW Vital Images, Inc. ("Plaintiff") as and for its Complaint against Somanetics Corporation ("Defendant"), states and alleges as follows:

## PARTIES

1. Plaintiff is a Minnesota corporation having a principal place of business at 5850 Opus Parkway, Suite 300, Minnetonka, MN 55343.

2. Defendant is a Michigan corporation having a principal place of business at 2600 Troy Center Drive, Troy, MI 48084.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over the claims asserted in this action pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338, and 1367. The claims alleged in this Complaint arise under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, MINN. STAT § 325D.44, *et seq.*, MINN. STAT § 333.285, and Minnesota Common Law.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiff's principal place of business is located within this district and division, and on

information and belief among other reasons, on October 15-17, 2010, Defendant attended and sponsored the Minnesota Perfusion Society Clinical Practices Meeting as a vendor, which was held at the Crowne Plaza Riverfront Hotel in downtown St. Paul, MN.

## FACTS

5. Since at least as early as October 1989, Plaintiff has sold computer software for medical imaging, disease screening, and treatment planning under its VITAL IMAGES® mark. Plaintiff is an international company headquartered in Minnetonka, Minnesota with offices in Belgium, Germany, France, Netherlands, United Kingdom, and China, and has spent and continues to spend a significant amount of time, money, and effort in promoting its distinctive VITAL®, VITAL IMAGES®, and other VITAL® based trademarks throughout the world; especially, throughout the United States. Plaintiff has been recognized by a variety of national and regional organizations as a market leader and, in fact, is the market leader in advanced visualization medical software with about a 33% market share. Plaintiff enjoys an excellent reputation and enormous goodwill in the terms VITAL®, VITAL IMAGES®, and other VITAL® based trademarks that identify, distinguish, and indicate Plaintiff as the source of its goods and services.

6. On October 31, 2007 and October 27, 2009, Plaintiff won the best new radiology software award from AuntMinnie.com. In the 2007 press release, Plaintiff was described as "a leading provider of enterprise-wide advanced visualization and analysis solutions." In 2009, Brian Casey, editor in chief of AuntMinnie.com said "[Plaintiff] has been a pioneer of advanced visualization software in medical imaging for many years."

7. On November 17, 2008, Plaintiff won the Frost & Sullivan Healthcare Innovation award in Medical Imaging Informatics. A Frost & Sullivan analyst commented that "[t]he Vital Images solution is recognized for its high performance, ease of use, workflow benefits of its anticipatory automation and ability to optimize the clinical relevance of large and complex datasets."

8. On March 31, 2009, Plaintiff achieved SSPA Certification for Excellence in Service Operations. Joanne Weigel, Director, Operational Certification Programs for SSPA, said "Vital Images is the first medical software organization to achieve this certification." Plaintiff joined other elite companies such as Hewlett Packard, Cisco Systems, and Xerox in sharing this honor.

9. In 2009 and 2010, the Technology Services Industry Association certified Plaintiff for excellence in its service operations.

10. In 2010, Plaintiff was recognized by J.D. Power and Associates for providing "An Outstanding Customer Service Experience."

11. In 2010, the Minnesota High Tech Association ("MHTA") awarded Plaintiff a Tekne Award in the IT-Software & Hardware, Communications and Infrastructure category. Mary Frances Schurb, interim president of MHTA, said "We are thrilled to recognize Vital Images for its proven leadership and commitment to technology development in Minnesota."

12. Plaintiff has also been featured in many well-known publications such as: TheStreet.com; Fast Money/CNBC; Fortune Magazine; Health Imaging and IT; Healthcare Informatics; and Baseline Magazine.

13. Plaintiff's Vital Software was featured in a news story that aired on Fox 9 News in Minneapolis, Minnesota, and used in connection with stories on medical treatment on the Oprah and The Doctors television shows.

14. Plaintiff uses its VITAL® and VITAL IMAGES® trademarks in connection with a wide range of goods and services including, but not limited to:

- Computer software for visualization and image analysis by medical professionals; computer software for medical imaging and treatment planning; computer software for use in clinical analysis and therapy planning for medical conditions; computer software that facilitates access to interactive medical images; and digital materials, namely, pre-recorded DVDs featuring information concerning medical imaging and medical software for medical imaging and treatment planning (the "Vital Software").

- Providing customer service in the field of computer software; arranging and conducting trade show exhibitions in the field of medical technology; demonstration of products; dissemination of advertisements and of advertising material; providing an on-line computer database featuring trade information in the field of medical technology; providing on-line directory information services also featuring hyperlinks to other web sites; processing telephone inquiries regarding advertised goods and services; and providing on-line registration services for computer software education programs.

- Education services, namely, providing classes, seminars and workshops in the field of medical imaging software, and distributing course material in connection

therewith, excluding text books; arranging of educational exhibitions, seminars, and conferences in the field of medical imaging and medical imaging software; conducting educational exhibitions in the nature of medical imaging software; educational demonstrations in the field of medical imaging; providing continuing medical education courses; providing on-line training in the field of medical software; training in the use and operation of medical software.

- Computer software maintenance and support services; providing specific information as requested by customers via the Internet; and technical support services, namely, troubleshooting of computer software problem.

- Web conferencing services; broadcasting programs via a global computer network; communication by electronic computer terminals; communication services, namely, electronic transmission of data and documents, excluding electronic text books, among users of computers; electronic data transmission, excluding electronic text books; podcasting services; transmission of information in the field of medical imaging by electronic communications networks, excluding electronic text books.

- Printed materials for use by medical professionals, namely, manuals, product informational cards, newsletters, case studies, and educational and informational materials in the field of medical imaging and medical image distribution

(collectively the "Vital Goods and Services").

15.   Plaintiff is the record owner of 18 United States Trademark Registrations for the VITAL® mark and marks that include the VITAL® mark:

- VITAL – U.S. Registration Nos.: 3875996, 3831047, 3821885, 3818369, 3818368, and 3818367;

- VITAL (Stylized) – U.S. Registration Nos.: 3548743, 3507028, 3507027, 3416864, and 3717242;

- VITAL U – U.S. Registration Nos.: 3507030 and 3507029;

- VITAL & Design - Application Serial No. 77/885,148;

- VITALCONNECT – U.S. Registration No. 3036769;

- VITALPERFORMANCE – U.S. Registration No. 3180821;

- VITAL IMAGES – U.S. Registration No. 3301649; and

- VITAL THE IMAGE OF UNDERSTANDING & Design – U.S. Registration No. 3385302

(collectively the "VITAL® Marks").

16. Plaintiff is also the record owner of a pending trademark application for the mark VITAL, U.S. Application Serial No. 77/924,593 (the "VITAL Application"). The VITAL Application was filed on a use basis and the opposition period has expired with no opposition to the registration of the VITAL mark displayed in the VITAL Application being filed with the Trademark Trial and Appeal Board. Accordingly, a Certificate of Registration with respect to the VITAL Application will issue.

17. On March 16, 2009, Defendant filed an intent-to-use application with the United States Patent and Trademark Office ("USPTO") for the mark VITAL SYNC in connection with "Medical data integration system comprised of computer hardware and

software for management of medical and patient information" (the "VITAL SYNC Application").

18.  On November 11, 2009, Defendant file an Amendment to Alleged Use for the VITAL SYNC Application claiming the VITAL SYNC mark was first used anywhere on July 20, 2009 and first used in commerce on July 20, 2009. The USPTO accepted Defendant's Amendment to Alleged Use on November 13, 2009.

19.  Upon information and belief, Defendant cannot claim a date of first use prior to March 16, 2009 for the VITAL SYNC mark.

20.  Upon information and belief, Defendant cannot claim a date of first use in commerce prior to March 16, 2009 for the VITAL SYNC mark.

21.  All of the VITAL® Marks were used in commerce prior to March 16, 2009.

22.  Plaintiff has priority to use its VITAL® Marks.

23.  Defendant's VITAL SYNC mark is virtually identical to Plaintiff's VITAL® Marks. The VITAL SYNC and VITAL® Marks all begin with the term VITAL. Defendant's VITAL SYNC mark is three syllables and Plaintiff's VITAL® Marks (excluding VITAL THE IMAGE OF UNDERSTANDING) contain two to five syllables. Additionally, the VITAL SYNC mark and Plaintiff's VITAL® Marks have a similar meaning; namely, a concern with or necessary to the maintenance of life.

24.  Upon information and belief, Defendant's goods overlap with and are closely related to Plaintiff's VITAL Software. In an Office Action response dated August 3, 2009, Defendant said "the nature of [Defendant's] goods and the use of the [Defendant's] software is to integrate and manage medical data relating to medical and

patient information. The type of data being collected relates exclusively to the medical field." Defendant's statement about its software does not exclude the integration and management of medical images.

25. The nature of Plaintiff's computer software is visualization and analysis of 2D, 3D, and 4D images of anatomical structures and physiological function using CT (computed tomography) and MR (magnetic resonance) image data and is intended to be integrated with other solutions to foster more informed decisions during patient analysis and treatment planning processes. Plaintiff's software could be used in connection with and is complimentary to Defendant's computer hardware and software offered under the VITAL SYNC mark. Indeed, Defendant's use of the term SYNC suggests that its medical data integration system is intended to be used with other medical computer hardware or software.

26. In an Office Action response dated August 3, 2009, Defendant said "[Defendant's goods are for medical and patient information management and are made available exclusively to medical professionals." Plaintiff offers its Vital Software to medical and healthcare professionals. Plaintiff and Defendant's goods are targeted to the same class of consumer.

27. Defendant's use of the VITAL SYNC mark on or in connection with the goods described in the VITAL SYNC Application is likely to cause confusion, mistake, or deception. Consumers are likely to mistakenly believe that the goods Defendant offers under the VITAL SYNC mark are sponsored, endorsed, or approved by Plaintiff, or are

in some other way affiliated, connected, or associated with Plaintiff, all to the detriment of Plaintiff.

28. Without Plaintiff's permission, authorization, approval or consent, and with actual or constructive knowledge of Plaintiff's prior rights, Defendant commenced use of the confusingly similar VITAL SYNC trademark in connection with medical computer hardware and software.

29. Despite objection by Plaintiff, Defendant continues to use the confusingly similar VITAL SYNC trademark in connection with the sale of a complimentary good; namely, medical data integration system comprised of computer hardware and software for management of medical and patient information.

## COUNT I
### (Trademark Infringement of a Registered Mark)
### (Lanham Act § 32, 15 U.S.C. § 1114)

30. Plaintiff restates and incorporates by reference the allegations in Paragraphs 1-29.

31. Defendant's unauthorized use of the VITAL SYNC mark in connection with a medical data integration system comprised of computer hardware and software for management of medical and patient information is likely to cause confusion, cause mistake, and deceive as to the affiliation, connection, or association of Defendant with Plaintiff as to the origin, sponsorship, or approval of Defendant's goods by Plaintiff. This unauthorized use of VITAL SYNC constitutes trademark infringement under 15 U.S.C. § 1114.

32. Defendant's unlawful actions have caused, and will continue to cause, Plaintiff irreparable harm unless enjoined.

33. Defendant has profited from its unlawful actions and has been unjustly enriched to the detriment of Plaintiff. Defendant's unlawful actions have caused Plaintiff monetary damage in an amount presently unknown, but in an amount to be determined at trial.

## COUNT II
### (Federal Unfair Competition)
### (Lanham Act § 43(a), 15 U.S.C. § 1125(a))

34. Plaintiff restates and incorporates by reference the allegations in Paragraphs 1-33.

35. Defendant's unauthorized use of VITAL SYNC in connection with a medical data integration system comprised of computer hardware and software for management of medical and patient information is a false designation of origin, false or misleading description of fact, and a false or misleading representation of fact.

36. Defendant's unauthorized use of VITAL SYNC in connection with a medical data integration system comprised of computer hardware and software for management of medical and patient information is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's goods or commercial activities by Plaintiff.

37. Defendant's unlawful actions have caused, and will continue to cause, Plaintiff irreparable harm unless enjoined.

38. Defendant has profited from its unlawful actions and has been unjustly enriched to the detriment of Plaintiff. Defendant's unlawful actions have caused Plaintiff monetary damage in an amount presently unknown, but in an amount to be determined at trial.

### COUNT III
### (Minnesota Deceptive Trade Practices Act)
### (MINN. STAT. § 325D.44, *et seq.*)

39. Plaintiff restates and incorporates by reference the allegations in Paragraphs 1-38.

40. Defendant's unauthorized use of the VITAL SYNC mark in connection with a medical data integration system comprised of computer hardware and software for management of medical and patient information constitutes unfair and deceptive trade practices under the Deceptive Trade Practices Act of the State of Minnesota.

41. Defendant's unlawful actions have caused, and will continue to cause, Plaintiff irreparable harm unless enjoined.

42. Defendant has profited from its unlawful actions and has been unjustly enriched to the detriment of Plaintiff. Defendant's unlawful actions have caused Plaintiff monetary damage in an amount presently unknown, but in an amount to be determined at trial.

### COUNT IV
### (Dilution Under Minnesota Law)
### (MINN. STAT. § 333.285)

43. Plaintiff restates and incorporates by reference the allegations in Paragraphs 1-42.

44. Plaintiff's VITAL® Marks are well-known and famous in Minnesota.

45. Plaintiff's VITAL® Marks became famous in Minnesota before Defendant's first use of the VITAL SYNC mark in Minnesota.

46. Defendant's unauthorized use of the VITAL SYNC mark in connection with a medical data integration system comprised of computer hardware and software for management of medical and patient information dilutes the distinctive quality of Plaintiff's VITAL® Marks.

47. Defendant's unlawful actions have caused, and will continue to cause, Plaintiff irreparable harm unless enjoined.

48. Defendant has profited from its unlawful actions and has been unjustly enriched to the detriment of Plaintiff. Defendant's willful and unlawful actions have caused Plaintiff monetary damage in an amount presently unknown, but in an amount to be determined at trial.

## COUNT V
### (Common Law Unfair Competition)

49. Plaintiff restates and incorporates by reference the allegations in Paragraphs 1-48.

50. Defendant's unauthorized use of the VITAL SYNC mark in connection with a medical data integration system comprised of computer hardware and software for management of medical and patient information constitutes unfair competition under the common law.

51. Defendant's unlawful actions have caused, and will continue to cause, Plaintiff irreparable harm unless enjoined.

52. Defendant has profited from its unlawful actions and has been unjustly enriched to the detriment of Plaintiff. Defendant's unlawful actions have caused Plaintiff monetary damage in an amount presently unknown, but in an amount to be determined at trial.

## CONCLUSION

**WHEREFORE**, Plaintiff prays that the Court enter judgment:

1. In favor of Plaintiff and against Defendant on all of Plaintiff's claims;

2. Enjoining and restraining Defendant, its officers, agents, servants, employees, attorneys and all others in active concert or participation with Defendant, during the pendency of this action and thereafter permanently from:

    A. Doing business under the name VITAL SYNC or any other confusingly similar name;

    B. Using the mark VITAL SYNC or any confusingly similar designation alone or in combination with other words or designs, as a trademark, trade name component or otherwise, to market, advertise, or identify products and services not produced or authorized by Plaintiff;

    C. Unfairly competing with Plaintiff in any manner whatsoever;

    D. Causing likelihood of confusion, injury to business reputation, or dilution of the distinctiveness of Plaintiff's VITAL® Marks, symbols, labels, or forms of advertisement;

E.  Causing likelihood of confusion or injury to business reputation of Plaintiff's VITAL® Marks, symbols, labels, or forms of advertisement;

F.  Using in any manner the term VITAL or any variation thereof, in connection with any advertisement or promotion; and

G.  Committing any other act that infringes Plaintiff's VITAL® Marks or constitutes an act of trademark or service mark infringement, contributory infringement, trademark dilution, or unfair competition under federal common law or Minnesota state law.

3.  Requiring Defendant to deliver up, or cause to be delivered up, for destruction all labels, sign, prints, packages, wrappers, receptacles, advertisements, and all other materials in the possession or control of Defendant that infringe Plaintiff's VITAL® Marks;

4.  Requiring Defendant to account for and pay over to Plaintiff the Defendant's profits and all damages sustained by Plaintiff;

5.  Awarding Plaintiff its attorneys' fees, treble damages, costs, and expenses pursuant to 15 U.S.C. §§ 1114 and 1117, and MINN. STAT. § 333.29; and

6.   Awarding Plaintiff such other relief as the Court may deem just and equitable.

Dated: December 20, 2010

Respectfully submitted,

WINTHROP & WEINSTINE, P.A.

*/s/ Bradley J. Walz*

Peter J. Gleekel, #149834
pgleekel@winthrop.com
Bradley J. Walz, #339891
bwalz@winthrop.com

3500 Capella Tower
225 South Sixth Street
Minneapolis, MN 55402
Telephone:  612-604-6400
Facsimile:  612-604-6800

ATTORNEYS FOR PLAINTIFF
VITAL IMAGES, INC.

5689747v2